### In re Kevin KUBANKIN.

### No. 10–08–00202–CV.

Court of Appeals of Texas, Waco.

July 9, 2008.

W. Lee Johnson, Young Johnson & Hines PC, Ennis, TX, for Relator.

Michael W. Hartley, Waxahachie, TX, for Real Party In Interest.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA (Chief Justice GRAY dissenting with note)*.

## OPINION

PER CURIAM.

Kevin Kubankin seeks a writ of mandamus compelling Respondent, the Honorable Al Scoggins, Judge of the 378th District Court of Ellis County, to grant his petition for writ of habeas corpus filed under section 153.371 of the Family Code by which Kubankin seeks the return of his son from the child's mother. We will conditionally grant relief.

## Background

Kubankin and his former wife Jessica Farmer were divorced in 2003. Under the

---

* ("Chief Justice Gray dissents. A separate opinion will not issue. He notes, however, that this Court's judgment may become moot if the trial court renders and signs a modification order that documents the parties' agreement regarding the right to possession of the child before the child is transferred back to Ohio where he is not getting the counseling the trial court has already determined that it would be in the child's best interest to receive immediately, and which he is currently receiving in Ellis County.")

divorce decree, they were designated joint managing conservators with Farmer having the "exclusive ... right to determine the legal domicile of the children." Apparently, they decided on an annual basis to modify the custody provisions of the decree, and Respondent signed agreed modification orders accordingly.[1]

In January 2008, Kubankin and Farmer submitted their most recent agreed order to Respondent. This order appoints Kubankin as managing conservator of G.M.K., the child who is the subject of the underlying habeas proceeding. Among other rights, this order gives Kubankin "the right to have physical possession" of G.M.K., subject to Farmer's visitation rights. The agreed order grants Farmer the right to possession of G.M.K. and his siblings during certain holidays, including "the Spring Break Holiday of every year."

Kubankin lived in Ohio at the time Respondent signed the agreed order and continues to reside there. Farmer traveled to Ohio in March during the Spring Break holiday of the Waxahachie Independent School District, which began on March 17. She spent that week in a hotel and visited with her sons during the week, although their Spring Break did not begin until Friday, March 21.

Farmer testified that she had conversations with G.M.K. both before and during Spring Break about his unhappiness with his living arrangements. She talked to Kubankin about the possibility of G.M.K. moving back to Texas with her. Kubankin told her that he would need to think about it. Farmer and the children drove back to Texas on March 21. The parties dispute whether at that point Kubankin had agreed to any change in the custody arrangements.

Farmer emailed Kubankin a proposed modification order on March 23. This proposed order, among other things, would: (1) designate Farmer as G.M.K.'s managing conservator, (2) give her the right to physical possession of him, subject to Kubankin's visitation rights, and (3) require Kubankin to make monthly child support payments, which the January 2008 order did not require. Kubankin responded with an email telling Farmer that the proposed order "looks fine" except for the child support provisions.

Farmer flew with G.M.K.'s younger brother back to Ohio on March 26. However, G.M.K. remained in Texas, where she had enrolled him in a Waxahachie ISD elementary school.

Kubankin filed his habeas petition on April 3, and Respondent set the matter for hearing on April 25. At the conclusion of the hearing, Respondent announced that he was denying the petition because Kubankin had agreed to a change in custody, he allowed G.M.K. to be enrolled in the Waxahachie school, and, based on the case history, "it isn't good for this kid to be bounced back and forth between these school districts like that."

Respondent signed an order denying the petition without significant elaboration regarding the reasons for the decision. However, Respondent also prepared written findings of fact and conclusions of law. Among the noteworthy findings, Respondent found that:

(1) the 2003 divorce decree named Kubankin and Farmer as joint managing conservators;

(2) the decree gave Farmer the exclusive right "to determine the legal domicile of the children";

---

1. The docket sheet reflects that agreed modification orders were signed by the court in 2004, 2005, 2006, 2007, and 2008.

(3) the decree did not award either party "the exclusive right to establish the primary residence of [G.M.K.]";

(4) none of the subsequent agreed modification orders altered these aspects of the divorce decree;

(5) the January 2008 order gives Kubankin the right to physical possession of G.M.K. and the right to designate his residence;

(6) the January 2008 order is "insufficiently specific and ambiguous as to the party who has the legal right to determine the primary residence of [G.M.K.]";

(7) the parties entered "a voluntary agreement" that G.M.K. should return to live with Farmer in Texas in contravention of the January 2008 agreed order;

(8) "The child's present circumstances while living with [Kubankin] significantly impaired the child's physical health or emotional development"; and

(9) "The child's physical and emotional well-being and development would be fostered by living with [Farmer] and attending counseling sessions with the same mental health care providers who treated child previously."

Consistent with these findings, Respondent made the following pertinent conclusions of law:

(1) "Farmer has the right to determine the legal domicile of [G.M.K.]";

(2) "Neither party has the exclusive right to establish the primary residence of [G.M.K.]";

(3) On the date Kubankin filed his habeas petition, "he did not have the present right to physical possession of [G.M.K.]";

(4) "The court should take the voluntary agreement between the parties into consideration in deciding who should be the managing conservator and whether the

existing order of January 8, 2008 should be changed";

(5) It is in the best interest of G.M.K. that Farmer retains the right to determine his legal domicile;

(6) The return of G.M.K. to Kubankin "will significantly impair the child's physical health or emotional development"; and

(7) It is in the best interest of G.M.K. to remain in Farmer's physical possession.

## Indigence

 Before we reach the merits of Kubankin's mandamus petition, we address his claim of indigence.

The test for determining indigence is straightforward: "Does the record as a whole show by a preponderance of the evidence that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so?"

*Higgins v. Randall County Sheriff's Office,* 257 S.W.3d 684, 686, 2008 WL 2069834, at *2 (Tex. 2008) (quoting *Pinchback v. Hockless,* 139 Tex. 536, 164 S.W.2d 19, 20 (1942)).

The purpose of Rule 20.1 is to *permit* parties to proceed without paying filing fees if they are unable to do so, and we have long interpreted the Rules of Appellate Procedure liberally in favor of preserving appellate rights. *See Verburgt v. Dorner,* 959 S.W.2d 615, 616–17 (Tex.1997); *Jones v. Stayman,* 747 S.W.2d 369, 370 (Tex.1987) ("Indigency provisions, like other appellate rules, have long been liberally construed in favor of a right to appeal.").

*Id.* at 688.

Here, Kubankin states in his indigence affidavit that he has "bi-weekly" income of $800. His spouse has no income. He owns a 1997 Dodge Caravan but no other property. He listed monthly expenses of $1,278, including $332 in child support. He paid the court reporter $600 for preparation of the reporter's record in this proceeding. His attorney has included a statement that he is not providing free legal services or legal services based on a contingent fee contract and that he has not agreed to pay or advance court costs on Kubankin's behalf. See Tex.R.App. P. 20.1(b) (specifying contents of indigence affidavit). Kubankin's attorney testified in the trial court that Kubankin had incurred approximately $1,400 in attorney's fees through the date of the hearing on the habeas petition and counsel would charge an additional $2,000 to pursue a mandamus petition in this Court.

In response, Farmer argues that Kubankin's child support obligation should not be considered because Kubankin did not pay child support for either of his sons from January to March 2008, when both sons lived with him. Otherwise, she does not dispute any of the figures provided in his affidavit.

Liberally construing the indigence requirements in favor of the right to appellate review, when we balance Kubankin's monthly net income of approximately $1,475 [2] against his monthly expenses (even setting aside the child support figure), the legal fees he owes, and the fees he has already paid for preparation of the reporter's record, we conclude that he established by a preponderance of the evidence that he is unable to pay this Court's

filing fees. See Higgins, 257 S.W.3d at 686, 2008 WL 2069834, at *2.

## Family Code Habeas Petition

Section 157.372(a) of the Family Code provides:

Subject to Chapter 152 and the Parental Kidnapping Prevention Act (28 U.S.C. Section 1738A), if the right to possession of a child is governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator only if the court finds that the relator is entitled to possession under the order.

Tex. Fam.Code Ann. § 157.372(a) (Vernon 2002). Chapter 157 provides exceptions where: (1) the relator voluntarily relinquished actual possession of the child for not less than six months; or (2) "there is a serious immediate question concerning the welfare of the child." Id. §§ 157.373, 157.374 (Vernon 2002).

 "Upon proof of the prior order, absent dire emergency ..., the grant of the writ of habeas corpus should be automatic, immediate, and ministerial, based upon proof of the bare legal right to possession." Schoenfeld v. Onion, 647 S.W.2d 954, 955 (Tex.1983) (orig.proceeding) (per curiam); accord In re deFilippi, 235 S.W.3d 319, 322 (Tex.App.-San Antonio 2007, orig. proceeding) (per curiam); In re Lau, 89 S.W.3d 757, 759 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). "The trial court may not deny the writ based on the best interests of the child." Schoenfeld, 647 S.W.2d at 955; accord deFilippi, 235 S.W.3d at 322.

2. We arrived at this figure by multiplying Kubankin's $800 bi-weekly income times twenty-six, then dividing by twelve months, resulting in gross monthly income of approximately $1,733, then applying the Attorney General's 2008 Tax Chart for calculating net monthly income for child support.

■ Mandamus relief is available to correct the erroneous denial of a habeas petition seeking possession of a child under Chapter 157 of the Family Code. *deFilippi*, 235 S.W.3d at 322; *Lau*, 89 S.W.3d at 758; *see also Schoenfeld*, 647 S.W.2d at 955–56.

## Entitlement to Possession

■ To obtain habeas relief under section 157.372(a), Kubankin must first establish that he is entitled to possession of his son under a court order. *See* Tex. Fam. Code Ann. § 157.372(a). In that regard, the only relevant court order is the January 2008 order which gives Kubankin "the right to have physical possession" of G.M.K.

■ Nevertheless, Farmer contends, and Respondent apparently agreed, that this order was superseded by the parties' oral agreement to modify the order.[3] We disagree. Parties to child custody orders doubtlessly effect de facto modifications of such orders by agreement and without court approval on a regular basis. The Family Code encourages parents to make an "agreed parenting plan" regarding conservatorship and possession of the child. *See* Tex. Fam.Code Ann. § 153.007 (Vernon Supp.2007); *see also* Tex. Fam.Code Ann. § 154.124 (Vernon Supp.2007) (providing for "agreement concerning support"). But court approval has always been required to make such agreements enforceable.

Sections 153.007 and 154.124 are very similar in their language regarding the need for court approval of such agreements. But while there is little case law discussing this requirement under section 153.007, there are some relevant decisions under section 154.124.

Referring to section 154.124, the Austin Court of Appeals has said "the family code still requires a court order to modify child support." *Gonzalez v. Tippit*, 167 S.W.3d 536, 542 (Tex.App.-Austin 2005, no pet.). According to the Fourteenth Court of Appeals:

In Texas, the Legislature has explicitly required that parental agreements concerning child support be expressly approved by the court based on whether the agreement is in the child's best interest. Accordingly, agreements by parents to reduce or modify court-ordered child support obligations without such approval violate public policy and are unenforceable.

*Sudan v. Sudan*, 145 S.W.3d 280, 285 (Tex. App.-Houston [14th Dist.] 2004) (footnotes omitted), *rev'd on other grounds*, 199 S.W.3d 291 (Tex.2006) (per curiam); *see also Kurtz v. Kurtz*, 158 S.W.3d 12, 20 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) ("agreements concerning child support must be approved by the court").

And referring to a previous version of this statute, the Supreme Court has held:

The legislature intended that courts exercise independent judgment in matters affecting children, including the support obligation. In addition to denying the district court the authority to forgive child support arrearages under section 14.41(d), the legislature has also prohibited self-help by the obligor and obligee in prospectively modifying court-ordered child support without court approval. Tex. Fam.Code § 14.08(a). Furthermore, the legislature has expressly required that parental agreements concerning child support be approved by the court, which can accept or reject the agreement depending on whether or not it is in the child's best

---

3. Specifically, Farmer states, "Relator's legal right to possession of the child under the January 8, 2008 order was modified by agreement."

interest. Tex. Fam.Code § 14.06(a)-(d). These provisions of the Texas Family Code indicate that the legislature intended that the court closely supervise child support proceedings to guarantee that the best interest of the child is always considered.

*Williams v. Patton,* 821 S.W.2d 141, 143–44 (Tex.1991).

We hold that these decisions apply with equal force to agreements regarding conservatorship and possession of a child under section 153.007. Therefore, Kubankin's and Farmer's purported agreement to modify the January 2008 order remained unenforceable until it had been approved by Respondent in a modification proceeding under Chapter 156 of the Family Code. *See Williams,* 821 S.W.2d at 143–44; *Gonzalez,* 167 S.W.3d at 542; *Kurtz,* 158 S.W.3d at 20; *Sudan,* 145 S.W.3d at 285.

The January 2008 order gave Kubankin "the right to have physical possession" of G.M.K. Thus, Kubankin established that he was entitled to possession of his son under a court order. *See* Tex. Fam.Code Ann. § 157.372(a).

### Voluntary Relinquishment

Notwithstanding the provisions of this court order, section 157.373(a) gives a trial court discretion to "compel or refuse to order return of the child" if the relator voluntarily relinquished actual possession of the child for not less than six months. *Id.* § 157.373(a). Thus, even assuming Kubankin initially agreed to the proposed change in custody arrangements, Respondent could not rely on this acquiescence as

a basis for denying the habeas petition until Kubankin had acquiesced for a period of six months.[4] This purported agreement had been "in effect" for little more than thirty days at the time of the hearing. Thus, permitting this "agreement" to control the resolution of Kubankin's habeas petition would render the six-month requirement of section 157.373 meaningless. *See Mid–Century Ins. Co. of Tex. v. Ademaj,* 243 S.W.3d 618, 621–22 (Tex.2007) (declining to construe statute in a manner which would render it meaningless).

### Serious Immediate Question Concerning Child's Welfare

Section 157.374 authorizes a trial court to "render an appropriate temporary order if there is a serious immediate question concerning the welfare of the child." Tex. Fam.Code Ann. § 157.374.

Respondent found that G.M.K.'s living circumstances in Ohio "significantly impaired the child's physical health or emotional development" and that his "physical and emotional well-being and development would be fostered by living with [Farmer] and attending counseling sessions with the same mental health care providers who treated child previously." Respondent concluded that ordering G.M.K.'s return to live with Kubankin in Ohio would "significantly impair the child's physical health or emotional development."

However, to justify a denial of habeas relief, a court must find that "there is a *serious immediate* question concerning the welfare of the child." *Id.* (emphasis added). This means that there must be

---

4. We readily acknowledge that this 6–month requirement may lead to results which are not in the best interest of a child, particularly if a parent with the right to possession waivers on the issue of whether he really wants to give up his possessory rights. However, the best

interest of the child is not a consideration in these habeas proceedings. *Schoenfeld v. Onion,* 647 S.W.2d 954, 955 (Tex.1983) (orig.proceeding) (per curiam); *accord In re deFilippi,* 235 S.W.3d 319, 322 (Tex.App.-San Antonio 2007, orig. proceeding) (per curiam).

evidence of an " 'immediate danger of physical or emotional harm' which requires immediate action to protect the child." *Forbes v. Wettman*, 598 S.W.2d 231, 232 (Tex.1980) (orig.proceeding) (citing *McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex. 1977) (orig.proceeding)); *accord deFilippi*, 235 S.W.3d at 324; *Lau*, 89 S.W.3d at 759.

Texas appellate courts have repeatedly held that a serious and immediate question concerning the children's welfare requires proof of an imminent danger to the children's physical or emotional well-being, or, stated another way, a dire emergency. "Unless it was shown, and the trial court found, that the children were in imminent danger of physical or emotional harm and that immediate action was necessary to protect [them], the trial court [is] without authority to deny the writ."

*deFilippi*, 235 S.W.3d at 324 (quoting *Grimes v. Flores*, 717 S.W.2d 949, 952 (Tex.App.-San Antonio 1986, orig. proceeding)); *see also Schoenfeld*, 647 S.W.2d at 955; *Forbes*, 598 S.W.2d at 232; *McElreath*, 545 S.W.2d at 958.

Here, there is no evidence of a "dire emergency" which poses an "immediate danger of physical or emotional harm" to G.B.K. *See Schoenfeld*, 647 S.W.2d at 955; *Forbes*, 598 S.W.2d at 232; *McElreath*, 545 S.W.2d at 958; *deFilippi*, 235 S.W.3d at 323–26.

### Other Considerations

■ Respondent also emphasized that the wording of the parties' divorce decree and subsequent modification orders never explicitly gave either party "the exclusive right to establish the primary residence of [G.M.K.]."[5] *See* TEX. FAM.CODE ANN. §§ 153.132(1), 153.134(b)(1) (Vernon Supp.

2007). The fact that these various orders do not contain the precise language of the Family Code is not dispositive. For example, the divorce decree named the parties as joint managing conservators but gave Farmer "the exclusive right to determine the legal domicile of the children." This provision was included within a listing of seven "exclusive rights" given Farmer which closely correspond to the exclusive rights given a sole managing conservator by section 153.132. *See* TEX. FAM.CODE ANN. § 153.132. Thus, the only reasonable construction of this provision is that the divorce decree gave Farmer the exclusive right "to designate the primary residence of the child[ren]." *Id.* § 153.132(1), *see also id.* § 153.134(b)(1) (order establishing joint managing conservatorship "shall ... designate the conservator who has the exclusive right to determine the primary residence of the child").

The January 2008 order does not use the term "exclusive" to define either party's rights and duties. However, read as a whole, this order in essence appoints Kubankin as sole managing conservator of G.M.K. For example, the order appoints Kubankin "as Managing Conservator" of G.M.K. but further provides that Farmer "will remain the Managing Conservator of [their daughter]." The order gives Farmer limited visitation rights. And the order gives Kubankin "the right to have physical possession" of G.M.K. Therefore, we hold that the January 2008 order appointed Kubankin as sole managing conservator of G.M.K., and thus, Kubankin has the exclusive right "to designate the primary residence of the child." *Id.* § 153.132(1).

### Conclusion

Kubankin was entitled to possession of G.M.K. under the January 2008 order.

---

**5.** Farmer testified that she drafted the divorce decree and each of the subsequent modification orders approved by Respondent.

The record contains no evidence that he voluntarily relinquished actual possession of G.M.K. for not less than six months or that "there is a serious immediate question concerning the welfare of the child." Therefore, Respondent abused his discretion by denying Kubankin's habeas petition.

We conditionally grant the requested writ. The writ will issue only if Respondent fails to advise this Court in writing within fourteen days after the date of this opinion that he has vacated his previous order and instead granted Kubankin's habeas petition.