Opinion issued March 24, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00732-CV

———————————

Vietentours GmbH, Appellant

V.

The Ticket
Company, Inc. and The Ticket Company International, Inc., Appellees



 



 

On Appeal from the 165th District Court 

Harris County, Texas



Trial Court Case No. 2006-69465

 



 

MEMORANDUM OPINION

Vietentours
GmbH, a German company, sued The Ticket Company Inc. and The Ticket Company
International, Inc. (“TC International”) on sworn account and for breach of
contract for services provided in connection with the World Cup held in Germany
in June and July 2006.  Vietentours
claimed it provided over €5.3 million worth of services, but was paid only
€4.1million, leaving a balance of €1,217,451.55.  A jury found that both TC International and
Ticket Company breached the contract with Vietentours, but their breach was
excused.  The trial court entered a take
nothing judgment on Vietentours’s claims against both companies. Vietentours
raises four issues on appeal, focusing primarily on the legal and factual
sufficiency of the jury’s finding of excuse. 
Vietentours also challenges the sufficiency of the evidence supporting
the jury’s finding of Vietentours’s breach, the submission of the damages
question, and the finding that the two companies are not jointly and severally
liable.  

We affirm.

Background

Vietentours provides hotel brokering and logistical services
for major international sporting events such as the Olympics or World Cup.  Ticket Company and TC International were Houston-based
ticketing companies that provided services for group and individual customers
to attend sport and concert events.  Years
before this dispute arose, the two owners of Ticket Company, Christopher Toy
and Ali Fazeli, formed TC International with Andrew Worthington.[1]  TC International specialized in selling
packages to events including hotels, airfare, tickets, and souvenirs, while
Ticket Company is a ticket broker.  TC
International is no longer in business. 

In 2004, Vietentours and one of the two companies—the
parties disagree which one—decided to collaborate on major international
sporting events.  Vietentours contends
that it did business with Ticket Company. 
Defendants assert that only TC International contracted for
Vietentours’s services and that they made the distinction clear.[2]  Ticket Company and TC International shared
offices and had some overlapping employees, though they had separate bank
accounts, tax returns, and phone and fax numbers.  Vietentours addressed its invoices to Ticket
Company, but TC International made all the payments.  Worthington, who was Defendants’ primary
liaison with Vietentours, had business cards and emails identifying himself as
the “Director of International Sales and Marketing” for Ticket Company even
though he was a co-owner only of TC International.  Regardless, the parties generally had a
satisfactory business relationship and worked on several events together.  

In 2005, the managing director for Vietentours, Hans
Overhage, and several Vietentours principals met with Toy, Fazeli, and
Worthington in Germany to discuss providing a package for the 2006 World
Cup.  The parties agreed that Defendants
would purchase tickets for the games and arrange for air travel, and
Vietentours would provide bookings for hotels, restaurants, and local
transportation.  Early booking of the
hotel rooms was important because 600-700,000 visitors needed rooms during the
World Cup.  The arrangements were not
exclusive—Vietentours assisted a total of 60,000 customers for all of its
clients and Defendants also booked hotels outside of the agreement with
Vietentours.  Defendants were to provide
Vietentours with the number and dates of the hotel rooms needed for their
customers as soon as possible after the brackets for cities and teams was
announced in December 2005. 

Vietentours sent Worthington a series of written contracts
between Vietentours and Ticket Company but they were never signed.  The problem with the contracts was that there
were so many groups of customers with changing preferences and requirements that
it was “almost impossible to be producing contract after contract.”   The parties decided to “keep control” of the
evolving list of needed hotels and their agreements through an excel
spreadsheet.  

Vietentours ultimately provided hotel rooms and other
services to approximately 3,000 to 6,000 of Defendants’ customers for the World
Cup.  The World Cup began on June 9 and
ended on July 9, 2006.  The hotel rooms
were needed from June 6 until July 10.  The
games were held in over a dozen cities in Germany.

On June 7, two days before the start of the World Cup, Overhage
informed Worthington that €1.8 million was overdue for Vietentours’s
services.  Vietentours had already paid
for the hotel rooms and was facing a large loss and Defendants’ prior payments
did not cover the amounts owed.  Worthington
responded that he understood that half of the past-due amount had been paid or
was going to be paid that day.  Vietentours
did not provide Worthington with copies of any invoices for him to review so he
could verify this amount, but instead showed him various receipts and other
information that confirmed the approximate amount. 

Vietentours and Worthington signed an agreement on June 7 that,
as of that date, Ticket Company owed Vietentours “about” €1,800,000.  The June 7 agreement reflects that
Worthington was acting on behalf of Ticket Company. Worthington agreed to
provide proof of payment of €900,000 by 4:00 p.m. that day and to pay the
remaining €900,000 by June 9.  The June 7
agreement stated that if Worthington failed to provide proof of the first
payment, “Vietentours will cancel the rooms” for guests checking in the next
day.  Additionally, if the second payment
was not received by June 9, Vietentours would “cancel all the rooms and other
services” for guests arriving on or after June 14.  TC International made payments of €600,000 by
June 9 and €400,000 before the end of the month.  Therefore, based on the amounts stated in the
June 7 agreement, Ticket Company still had an outstanding balance of
€800,000.  After receiving these
payments, Vietentours did not cancel the hotel rooms or its other
services.  On the contrary, the parties
entered into an addendum agreement identifying additional services that
Vietentours had not yet invoiced.  

On July 3, immediately before the World Cup finals, Worthington
and Overhage signed another agreement regarding the outstanding
indebtedness.  Worthington met with Overhage
and Vietentours’s account manager for two days before he signed that agreement.  By that time an unspecified number of Defendants’
customers had already left Germany to return to their homes.  Worthington was given a number of invoices to
review so he could reconcile the accounts, but did not have the opportunity to
study them until returning to his hotel on the night of July 3.  Nevertheless, Worthington signed another
agreement before his study of the invoices, again purporting to act on behalf
of Ticket Company.  In the July 3
agreement, Ticket Company admitted that Vietentours had provided services and
supplies through that date with a value of €5,365,271.55.  The July 3 agreement further stated that “the
amounts calculated and invoices are correct and not questioned.” 

The agreement introduced during trial states that a
statement of individual and group calculations was attached and “correct and
agreed on by both parties.”  The copy of
the July 3 agreement introduced as a trial exhibit does not include any
attachment.  Several spreadsheets,
however, were admitted as a separate exhibit. 
These spreadsheets show itemized charges for transfers from airports,
meals, transportation, and tours and were initialed by Worthington on behalf of
TC International on July 4.  Overhage
testified the spreadsheets were attached to the July 3 agreement after Worthington
signed them on July 4. 

Based on the undisputed evidence about the amounts Defendants
paid Vietentours, the July 3 agreement would leave an unpaid total of €1.2
million.[3]  At trial, Worthington admitted in
cross-examination that Vietentours was not paid the entire amount owed, but he
did not know the amount of the outstanding debt.  Toy, a co-owner of Ticket Company, testified
that Vietentours was not fully paid but deferred to Worthington as to the
amount outstanding.  Neither party called
an accountant or bookkeeper to address the amount of the bills or payments.

Worthington and Defendants’ representatives testified that
they experienced problems with Vietentours’s services.  Several hotels were not located in the
correct cities or within walking distance of public transportation as
promised.  Several buses were late and
the guides provided by Vietentours did not speak Spanish as required.  Rooms were also double booked so that some
businessmen shared rooms with only one bed. 
The witnesses, however, testified in general terms and only provided
details for one specific problem: when Vietentours failed to deliver five rooms
at a five-star hotel and instead provided 11 rooms at a four-star, inferior
hotel.  Defendants found replacement
rooms on the open market.  

Worthington claimed that when he signed the July 3 agreement
he did not know customers were demanding refunds due to complaints about the
services provided by Vietentours.  He acknowledged
on cross-examination, however, that all payments and credits were given by
Vietentours.  Overhage testified that
Vietentours was willing to consider granting Ticket Company credits for any
deficiencies in its services, but Ticket Company never provided any details on
the amounts.  

Worthington testified that Vietentours threatened to cancel all
services if he did not sign the June 7 and July 3 agreements—June 7 being two
days before the start of the World Cup and July 3 immediately before the finals.  Overhage denied placing any pressure on
Worthington to sign the agreement.  He
further claimed that he told Worthington that Vietentours would cancel only the
rooms that had not been paid for; it would not cancel the rooms covered by Defendants’
past payments. 

The trial court granted a directed verdict that TC
International failed to comply with its contract with Vietentours.  The jury then found that the remaining
parties, Ticket Company and Vietentours, also failed to comply with the
contract and that Ticket Company and TC International were excused from
performance on grounds of prior material breach or duress.  The jury found that Worthington was
authorized to act for Ticket Company, even though he was a co-owner of TC
International, but that the companies did not have an alter ego or joint
venture relationship.  Finally, the jury
assessed $400,000 in damages against TC International only and awarded
Vietentours attorney’s fees.  The trial
court rendered a take nothing judgment on Vietentours’s claims.  

Directed Verdict and Submission of Excuse Question

As part of his first
issue, Vietentours contends that the trial court erred in submitting jury
question two, asking whether TC International’s failure to comply was excused,
because the court granted Vietentours a partial directed verdict on that issue.  The trial court granted a directed verdict on
one issue only: TC International’s admission that it owed Vietentours money
under the contract and, therefore, breached the contract.  The trial court did not grant a directed verdict
on the excuse issue and excuse was not discussed during the directed verdict
motion.  We overrule the first part of
Vietentours’s first issue.

Legal and Factual Sufficiency

In the remainder of its first issue, Vietentours argues the
evidence was legally and factually insufficient to support the jury’s findings
that Ticket Company and TC International’s performance was excused.  The trial court utilized
a broad form jury question combining excuses of prior material breach and
duress.  Because the trial court used a
broad form question without objection, Vietentours can prevail on its
sufficiency of the evidence claims only if the evidence is insufficient for
both prior material breach and duress.  See City of Houston v. Levingston, 221
S.W.3d 204, 230 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  In other words, either of the submitted
theories may be the basis for concluding that sufficient evidence exists to
support the jury’s finding of excuse.  

A.      Standard of Review

We will sustain a legal sufficiency or
“no-evidence” challenge if the record shows one of the following: (1) a
complete absence of evidence of a vital fact, (2) rules of law or evidence bar
the court from giving weight to the only evidence offered to prove a vital
fact, (3) the evidence offered to prove a vital fact is no more than a
scintilla, or (4) the evidence conclusively establishes the opposite of the
vital fact.  City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005).  In conducting a legal sufficiency review, a
“court must consider evidence in the light most favorable to the verdict, and
indulge every reasonable inference that would support it.”  Id. at
822.  If there is more than a scintilla
of evidence to support the challenged finding, we must uphold it.  Formosa
Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d
41, 48 (Tex. 1998).  If the evidence at
trial would enable reasonable and fair-minded people to differ in their
conclusions, however, then jurors must be allowed to do so.  City of
Keller, 168 S.W.3d at 822; see also
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  “A reviewing court cannot substitute its
judgment for that of the trier-of-fact, so long as the evidence falls within
this zone of reasonable disagreement.”  Keller, 168 S.W.3d at 822.

In conducting a factual
sufficiency review, we must consider and weigh all of the evidence that
supports or contradicts the jury’s findings. 
Plas-Tex., Inc. v. U.S. Steel
Corp., 772 S.W.2d 442, 445 (Tex. 1989). 
We set aside a verdict only if the evidence is so weak or if the finding
is so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust.  Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001).  The jury is the sole
judge of the witnesses’ credibility and the weight to be given their
testimony.  Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.
2003).

B.      Excuse by Duress 

          Vietentours
contends the evidence supporting the jury’s finding of excuse is legally and
factually insufficient because the company exercised a legal right to demand
payment without exerting any duress on Defendants.  

          1.       Duress

In general terms, economic duress that may
invalidate a contract and render it unenforceable occurs when one party takes unjust
advantage of the other party’s economic necessity or distress to coerce the
party to enter into the contract.  See Brown v. Cain Chem., Inc., 837
S.W.2d 239, 244 (Tex. App.—Houston [1st Dist.] 1992, writ denied).  There are five elements to an economic duress
defense: 

(1)
a threat or action was taken without legal justification; (2) the threat or
action was of such a character as to destroy the other party’s free agency; (3)
the threat or action caused the opposing party’s free will to be overcome and
caused the other party to do that which it would not otherwise have done and
was not legally bound to do; (4) the restraint was imminent; and (5) the
opposing party had no present means of protection.

 

Graybar Elec. Co. v.
LEM & Assocs., L.L.C., 252 S.W.3d 536,
546 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

The test for causation—whether the duress
contributes substantially to the claimant’s decision to assent—is subjective
and considers all of the surrounding circumstances such as the background and
relationship of the parties and the emotional condition of the party claiming
duress.  Sudan v. Sudan, 145 S.W.3d 280, 287 (Tex. App.—Houston [14th Dist.]
2004), rev’d on other grounds, 199
S.W.3d 291 (Tex. 2006).  The duress,
however, must derive from acts or conduct of the party accused of
duress and the emotions of the purported victim alone are
insufficient to establish duress.  Williams v. Jackson, No. 01-07-00850-CV,
2008 WL
4837484, at *2  (Tex. App.—Houston [1st
Dist.] Nov. 6, 2008, no pet.) (mem. op.); Sudan,
145 S.W.3d at 286.  What constitutes duress is a question of law, but whether duress
exists in a particular situation is generally a question of fact dependent upon
the circumstances surrounding the situation. 
Matthews v. Matthews, 725
S.W.2d 275, 278 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.).   

The jury charge in questions 2 and
5 defined duress as “the mental, physical or economic coercion
of another, causing that party to act contrary to his free will and interest.”  During trial, Vietentours objected to the
excuse questions based on legal and factual sufficiency and not to the language
of the charge.  Absent an objection or
requested definition or instruction made to the trial court informing it that
the proposed charge incorrectly states the law, we must measure the sufficiency
of the evidence based on the charge given. 
Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 715 (Tex. 2001) (holding review of
sufficiency of evidence is made against charge given, even if incorrect
statement of law, in absence of objection); Osterberg v. Peca, 12 S.W.3d
31, 55–56 (Tex. 2000) (review evidence against charge in absence of objection).
 

B.      Sufficient
Evidence of Duress

Vietentours argues that there is legally and factually insufficient
evidence to support the jury finding that Worthington signed the June 7 and July 3 agreements contrary to his
free will and interest as a result of mental or economic coercion.  More specifically, Vietentours contends
that it only threatened to withhold continuing services if Defendants did not
pay or promise to pay, a threat it had a legal right to make.  Vietentours further asserts that the threat
only involved further performance and did not involve paid-for hotel rooms. 

To constitute duress, the threat must involve some act the
threatening party has no legal right to do. 
Flameout Design & Fabrication,
Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 837 (Tex. App.—Houston [1st
Dist.] 1999, no pet.). Vietentours
asserts it had a legal right to demand overdue payment for its services.  Worthington testified he found nothing wrong
with Vietentours “asking to be paid for [its] services,” but he also stated
that everything would “collapse” if he did not sign the June 7 agreement because
their customers would not have any rooms, buses, or other services from
Vietentours.  The World Cup tournament
began on June 9, therefore, Vietentours demands on June 7 left Defendants no
alternatives to accommodate their customers at a time when between 600,000 and
700,000 spectators were competing for rooms and services.  Worthington claimed that Vietentours
threatened that all of Defendants’ customers would have no hotel rooms or
services.  The June 7 agreement,
moreover, does not limit the threat to only rooms for which Defendants had not
yet paid.  On the contrary, it states
that Vietentours “will cancel all the rooms and other services” for guests who
had not yet checked into the hotels.  

Worthington testified
that “the same kind of threat” was made before the July 3 agreement—“sign it or
else.”  He stated, “If I didn’t sign this
agreement, I wouldn’t get the rooms for the finals.”  He testified that he had to sign both
contracts because he did not “have an option.” 

Reading Worthington’s
testimony in the light most favorable to the verdict, as we must in a legal
sufficiency challenge, we reject Vietentours’s argument.  The evidence is undisputed that Defendants
paid €4.1 million towards the amount owed, though the jury heard conflicting
evidence as to the amount of the remaining debt.  Contrary to Vietentours’s contentions, the June
7 agreement does not limit the threat to only unpaid rooms and Worthington
testified that the same threats were made in conjunction with the July 3
agreement.  The jury also heard evidence
that Vietentours timed the threats of total cancellation to coincide with the
start of the World Cup and the final rounds. 


Vietentours had a
legal right to demand payment for the money owed for its services, but it did
not have the right to threaten to cancel all services, even those for which
Defendants had already paid. 
Worthington’s testimony about the threat of total cancellation, despite
Defendants’ payments, and the timing of those threats are more than a scintilla
of evidence to show economic coercion causing a party to act “contrary to his
free will and interest.”  We find the
evidence to be legally sufficient to support the jury’s finding of duress.    

For a factual
sufficiency review, we must consider all the evidence, whether it supports or
contradicts the jury’s findings.  See Plas-Tex., Inc., 772 S.W.2d at 445.  The record does not reflect how many
customers remained in Germany by July 3 and Vietentours representatives
testified that the only threat concerned their continued performance, not the
cancellation of all rooms and services. 
The jury determined the weight and credibility to give Worthington’s
testimony compared to the testimony of Vietentours’s witnesses.  See
Golden Eagle Archery, 116 S.W.3d at 761. 
“The issue of duress actually boils down to the credibility of the
witnesses,” and we will not disturb the jury’s evaluation of that
testimony.  Gooch v. Am. Sling Co., 902 S.W.2d 181, 187 (Tex. App.—Fort Worth
1995, no writ).  We cannot say, reviewing all of the
evidence that supports and contradicts the jury’s findings, that the evidence
was so weak as to make a jury finding of excuse by duress clearly wrong and
unjust.  See id.  

We find one of the two grounds contained in the broad form
excuse questions is supported by legally and factually sufficient
evidence.  We therefore overrule
Vietentours’s first issue.  

Conclusion

The
remainder of Vietentours’s appeal argues the following: first, the evidence was
insufficient to show Vietentours breached the contract; second, that the trial
court erred in submitting a damages question because it asserts Worthington
made a judicial admission as to damages; and third, that the trial court failed
to hold Defendants jointly and severally liable under an alter ego theory for
the damages awarded.  We have upheld the
jury’s finding of Defendants’ excused performance.  Therefore, the trial court correctly entered
a take nothing judgment and we do not reach the remaining issues on Vietentours’s
breach, damages, or alter ego.

We
affirm the judgment of the trial court.

                                                                   

 

 

Harvey
Brown

                                                                   Justice


 

Panel consists
of Justices Jennings, Higley, and Brown.











[1]           At the time of trial, Worthington was
no longer associated with Ticket Company or TC International.





[2]
          For ease and clarity, we will
refer to the two Houston companies as “Defendants” though we recognize the jury
found that no alter ego or joint venture existed between Ticket Company and TC
International.  





[3]           Neither
party disputes that Defendants paid Vietentours €4.1 million.  Overhage did not explain why the amount
owing increased after the June payments except to state generally that
Vietentours provided additional unspecified services as agreed to in the
addendum.