**In re Christopher R. deFILIPPI.**

No. 04–07–00506–CV.

Court of Appeals of Texas, San Antonio.

Aug. 30, 2007.

Sue M. Hall, Law Office of Sue M. Hall, San Antonio, TX, for Appellant.

Jo Chris G. Lopez, Robinson C. Ramsey, Langley & Banack, Inc., San Antonio,

Martha Cigarroa De Llano, Person, Whitworth, Borchers & Morales, L.L.P., Laredo, for Appellee.

Armando X. Lopez, Shirley Hale Mathis, Law Office of Shirley Hale Mathis, P.C., Laredo, for Ad Litem.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

PER CURIAM.

In this original proceeding, relator Christopher R. deFilippi seeks a writ of mandamus to obtain possession of his three children after the unexpected death of their mother. The Honorable Oscar J. Hale, Jr., Judge of the 406th Judicial District Court of Webb County, denied relator's habeas corpus petition. We conclude that the trial judge had a ministerial duty to return the children to their father and therefore conditionally grant mandamus relief.

### FACTUAL AND PROCEDURAL BACKGROUND

Christopher is the father of three school-age children, D.F., M.F., and A.F. Christopher was married to Marissa Keene, the children's mother and custodial parent. The couple divorced in Maryland in 2005 after a contentious custody dispute. Christopher was awarded regular, unsupervised visitation with the children. The Maryland court concluded that both parents were of good moral character and loved their children, but declined to order joint custody based on the couple's inability to communicate with each other.

In 2006, after additional contested proceedings in Maryland, Marissa and the children moved to Laredo, Texas. Although Christopher continued to live in Maryland, he visited the children in Laredo approximately one week per month. Christopher did not have a home in Laredo so he and the children stayed in a hotel suite during these visits. Also, during the year the children lived in Laredo, they returned to visit their father in Maryland on several occasions.

Tragically, Marissa was found dead in her swimming pool on June 3, 2007. The children's grandparents, Gladys Cronfel Keene and Roger Keene ("the Keenes"), assumed immediate care of the children while Christopher traveled to Laredo. Three days after Marissa's death, on June 6, 2007, the Keenes filed a suit affecting parent-child relationship in the district court in Webb County, Texas. The Keenes also obtained a temporary restraining order prohibiting Christopher from removing the children from Webb County. On June 13, 2007, Christopher filed a petition for a writ of habeas corpus in the same court seeking the immediate return of the children to him.[2] Judge Hale held a hearing on Christopher's petition for a writ of habeas corpus on June 20, 2007. Numerous witnesses testified, including two child psychologists. Concluding the evidence raised a serious immediate question concerning the children's emotional welfare, Judge Hale denied Christopher's habeas corpus petition. Instead, Judge Hale entered temporary orders appointing the Keenes temporary sole managing conservators of the children and providing Christopher with visitation.

These temporary orders prohibited Christopher from removing the children from Webb County.[3]

On July 26, 2007, Christopher petitioned this court for a writ of mandamus to compel Judge Hale to vacate his order denying habeas corpus relief. In his petition, Christopher emphasizes that he has a constitutional right to possession of his children and the trial court had a ministerial duty to return the children to him under the circumstances presented. Christopher contends that the trial court could have refused to return the children only if the evidence raised a serious and immediate question concerning the children's welfare. Christopher argues there was no such evidence presented in the trial court.

On July 27, 2007, we issued an order asking the trial judge and the Keenes to respond to the mandamus petition and set the case for oral argument. Oral argument took place on August 22, 2007, and we issued an order conditionally granting mandamus relief the same day. We now explain our reasons for granting mandamus relief.

### HABEAS CORPUS UNDER THE TEXAS FAMILY CODE

Subchapter H of the Texas Family Code governs habeas corpus proceedings for the return of a child. TEX. FAM.CODE ANN. §§ 157.371–.376 (Vernon 2002). This subchapter provides that if the right to possession of a child is governed by a court order, the court shall compel the return of a child if it finds that the party seeking relief is entitled to possession of a child under a court order. TEX. FAM.CODE ANN.

---

2. Christopher also moved for dismissal of the Keenes' suit affecting the parent-child relationship based on a lack of jurisdiction and the Keenes' lack of standing. These issues have not been formally presented to the trial court.

3. Judge Hale entered almost identical temporary orders in the suit affecting parent-child relationship on July 19, 2007.

§ 157.372 (Vernon 2002). It further provides that if the right to possession of a child is not governed by an existing order, the court may compel return of the child or issue temporary orders under Chapter 105 if a suit affecting the parent child relationship is pending and the parties have received notice of a hearing on temporary orders set for the same time as the habeas corpus proceeding.[4] TEX. FAM.CODE ANN. § 157.376 (Vernon 2002). Nevertheless, "[n]otwithstanding any other provision of [Subchapter H], the court may render an appropriate temporary order if there is a serious immediate question concerning the welfare of the child." TEX. FAM.CODE ANN. § 157.374 (Vernon 2002).

■■■■ Upon proof of the bare legal right of possession, the grant of the writ of habeas corpus should be automatic, immediate, and ministerial. *Schoenfeld v. Onion,* 647 S.W.2d 954, 955 (Tex.1983) (orig.proceeding); *Strobel v. Thurman,* 565 S.W.2d 238, 239 (Tex.1978) (orig.proceeding). The trial court is not permitted to consider the child's best interest, nor go beyond the immediate welfare of the child, in a habeas corpus proceeding. *Grimes v. Flores,* 717 S.W.2d 949, 952 (Tex.App.-San Antonio 1986, orig. proceeding). Mandamus may issue to correct the erroneous denial of habeas corpus relief under the Texas Family Code. *Schoenfeld,* 647 S.W.2d at 956; *In re Lau,* 89 S.W.3d 757, 759 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding)

## DISCUSSION

In the proceedings below, Christopher clearly established a superior right over the grandparents to possession of his children. *See Greene v. Schuble,* 654 S.W.2d 436, 438 (Tex.1983) (orig.proceeding) (in the event of the death of the managing conservator the surviving parent has a right to possession of the children and a court may enforce this right by issuance of a writ of habeas corpus); *Klein v. Cain,* 676 S.W.2d 165, 172 (Tex.App.-Amarillo 1984, orig. proceeding) (upon managing conservator's death, surviving parent and possessory conservator who had exercised regular visitation was entitled to possession of the children). In fact, as the children's father, Christopher possesses a fundamental, constitutional right to the care, custody, and control of his children. *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion) ("It is cardinal ... that the custody, care and nurture of the child reside first in the parents...."). The interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by the

---

**4.** The Keenes argue that section 157.376(a)(2) governs instead of section 157.376(a)(1) because they filed a suit affecting parent-child relationship in the district court of Webb County three days after Marissa's death. Therefore, they maintain it was within the trial court's discretion to enter temporary orders under Chapter 105 rather than compel return of the children to their father. Section 157.376 reads:

(a) If the right to possession of a child is not governed by an order, the court in a habeas corpus proceeding involving the right of possession of the child:
(1) shall compel return of the child to the parent if the right of possession is between a parent and a nonparent and a suit affecting the parent-child relationship has not been filed; or
(2) may either compel return of the child or issue temporary orders under Chapter 105 if a suit affecting the parent-child relationship is pending and the parties have received notice of a hearing on temporary orders set for the same time as the habeas corpus proceeding.
(b) The court may not use a habeas corpus proceeding to adjudicate the right of possession of a child between two parents or between two or more nonparents.

TEX. FAM.CODE ANN. § 157.376 (Vernon 2002).

Supreme Court of the United States. *In re Derzapf,* 219 S.W.3d 327, 334 (Tex.2007) (orig.proceeding) (citing *Troxel,* 530 U.S. at 65, 120 S.Ct. 2054).[5]

■■■■ When a party such as Christopher establishes his or her legal right to possession of a child, the trial court's authority to refuse habeas corpus relief is very limited. *In re Lau,* 89 S.W.3d at 759 ("[o]nce the prior order governing the right of possession is established, the only exception [to return of the child] ... is whether it is shown there is a 'serious and immediate question concerning the welfare of the child' ") (citing *Rocha v. Schuble,* 809 S.W.2d 681, 682–83 (Tex.App.-Houston [14th Dist.] 1991, orig. proceeding)). Evidence raising a serious immediate question concerning a child's welfare must be presented before the trial court has any discretion to deny the writ. *Grimes,* 717 S.W.2d at 952. A serious immediate question requires a situation that, without the court's immediate action, would subject the child to imminent danger of physical or emotional harm. *Forbes v. Wettman,* 598 S.W.2d 231, 232 (Tex.1980) (orig.proceeding). Thus, the key issue before us is whether the evidence raises a serious immediate question concerning the children's welfare. The Keenes argue there is ample evidence to support such a finding.

Before examining the evidence in this record, we do note the Keenes argue that under the current Texas Family Code the trial judge has varying degrees of discretion to deny habeas corpus relief depending upon whether the right to possession is governed by an existing order and whether a suit affecting parent-child relationship is pending at the time of the habeas corpus hearing. *See* TEX. FAM.CODE ANN. §§ 157.372, 157.376 (Vernon 2002). Thus, according to the Keenes, the fact that a suit affecting parent-child relationship was pending and temporary orders were set for hearing enlarged the trial court's discretion.[6] *See* TEX. FAM.CODE ANN. § 157.376(a)(2) (Vernon 2002). We do not reach this argument, however, because the Keenes conceded at oral argument that they assumed the burden of showing a "serious and immediate question concerning the [children's] welfare," and that this is the proper measure of the evidence in this case.

### A SERIOUS AND IMMEDIATE QUESTION CONCERNING THE CHILDREN'S WELFARE?

■■■ At the hearing below, the Keenes argued that returning the children to Christopher created a serious and immediate concern for the children's emotional welfare. They emphasized that the children had experienced an emotional trauma as the result of "the violent death of their mother," and therefore they needed "to remain with the people who can provide them the most comfort: their grandparents and their nanny." Additionally, the Keenes claimed "an additional aggravating factor is that [Christopher] is a suspect in the death of the children's mother." At

5.  Additionally, "[a] grandparent's rights are generally subordinate to a parent's." *In re Derzapf,* 219 S.W.3d at 334.

6.  The Keenes' argument is that Judge Hale's discretion to issue temporary orders should be measured by the standard in Chapter 105 of the Texas Family Code, which does not require the existence of a serious immediate question concerning the child's welfare, but rather directs that the temporary orders be for the "safety and welfare" of the child. *See* TEX. FAM.CODE ANN. § 157.376(a)(2). We believe that such an interpretation of the statute may have constitutional implications after *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion), but it is not necessary for us to address this issue here.

the conclusion of the hearing, the trial court denied habeas corpus relief explaining his ruling as follows:

> [I]t is the Court's opinion that there does exist a serious question as to the immediate welfare of the children; specifically, there's a serious and immediate concern as to the children's emotional well-being, if removed from their current surroundings and environment that they're familiar with, if they are removed from their extended family who have been with them for the past year, and other circumstances that the children are familiar with here in this city.

■ Texas appellate courts have repeatedly held that a serious and immediate question concerning the children's welfare requires proof of an imminent danger to the children's physical or emotional well-being, or, stated another way, a dire emergency. *Schoenfeld,* 647 S.W.2d at 955; *McElreath v. Stewart,* 545 S.W.2d 955, 958 (Tex.1977) (orig.proceeding). "Unless it was shown, and the trial court found, that the children were in imminent danger of physical or emotional harm and that immediate action was necessary to protect [them], the trial court [is] without authority to deny the writ." *Grimes,* 717 S.W.2d at 952.

The record shows Judge Hale did not base his ruling on the police investigation into Marissa's death and, on this record, it would not have been appropriate to do so.

*See id.* at 951–952 (pending criminal charges against a parent that could result in incarceration do not raise a serious and immediate question concerning the children's welfare). At the time of the hearing, Marissa's death had not even been ruled a homicide. The autopsy report was still pending and the cause and circumstances of Marissa's death remained undetermined. One officer testified that the police department was investigating the death as a homicide and Christopher was a "suspect." The officer further testified that Christopher had cooperated with police to the extent that he had provided a written account of his whereabouts for June 2 and June 3. To the officer's knowledge, the police had not followed up on or verified this information. On cross-examination, Christopher's counsel attempted to develop more evidence concerning the scope and nature of the police investigation, including information about the number of other suspects involved; however, the trial court sustained objections to this testimony.[7] Clearly, the evidence suggesting wrongdoing on Christopher's part was highly speculative and failed to show an immediate danger to the children.

We now address the evidence upon which the trial court based its ruling: removal of the children from their current surroundings, which included a familiar environment and the extended family who had been with them for the last year.[8] The Keenes presented several witnesses

---

7. An assistant district attorney, who was not a party to the habeas corpus proceeding, was in the courtroom and objected to counsel's questions.

8. Although not part of our analysis, we acknowledge that the record establishes that Christopher was an involved parent. After the children's move to Laredo, Christopher adjusted his employment duties so that he could work remotely, thereby allowing him to travel to Laredo one week per month. He also coordinated with the children's teachers and volunteered at their school. Moreover, one of the Keenes' experts, Dr. Joann Murphey, testified on cross-examination about the paramount importance of the children's relationship with their surviving parent. Dr. Murphey claimed that the children's being with a parent and having that parent put them to bed at night, kiss them, hug them, and tell them that everything is going to be okay was "much more than a hundred times better" than a paid therapist.

who testified about the children's current emotional state and the effect of moving them from Laredo to Maryland with their father.

According to Dr. Gladys Keene, the children's grandmother and a pediatrician, the circumstances of Marissa's death, the children's emotional loss, and the loss of stability and continuity placed the children in imminent danger. Dr. Keene testified that she was concerned about Christopher's inquiries about taking the children with him so soon after Marissa's death, his unwillingness to work with her and the children's psychologist during this time of crisis, and his lack of a plan to transition the children from Laredo to Maryland. Dr. Keene believed that the children would be harmed by moving to Maryland and "los[ing] everything else that gives them security." Dr. Keene explained that she felt she had "no choice" but to intervene because the children "cannot just be ripped up and pulled away like nothing happened to them."

Next, Dr. Joann Murphey, a clinical psychologist, testified generally about a child's need for stability to effectively cope with the loss of a parent. Dr. Murphey, who had interviewed the children just once, testified that she had been involved in cases in which a parent died and the other parent was suspected to have caused their death. In her opinion, the hardest situation for children to cope with was a scenario in which the children believed one parent had harmed another.

Finally, Dr. Guillermo E. Gonzalez, the children's psychologist,[9] stated that he was concerned about the "many losses experienced by the children" and about them "moving out someplace where the same kind of support is not there." He ex-

plained that in his opinion such a move could have "long-lasting effects" or "at least, prolong the healing process." Dr. Gonzalez also stated that the "mystery" surrounding their mother's death created "confusion" for the children, but he also indicated the children appeared to be unaware that Christopher was a "suspect" in the investigation.

The overarching concern expressed by Dr. Keene, Dr. Murphey, and Dr. Gonzalez is that the children's very removal from Laredo and relocation to Maryland constitutes an imminent danger. But, it is well-established that merely removing a child from a familiar environment does not rise to the level of a serious and immediate question concerning a child's welfare in the habeas corpus context. *See Hui–Mei Wise v. Yates,* 639 S.W.2d 460, 461 (Tex. 1982) (orig.proceeding) (one parent's intention to take a child to another country did not constitute a serious and immediate question concerning the child's welfare); *Cowan v. Lindsey,* 683 S.W.2d 55, 57 (Tex. App.-Tyler 1984, orig. proceeding) (fact that children had lived with their grandparents for a long time and would have to adjust to moving in with their mother did not show an imminent danger under the Family Code or outweigh the mother's right to possession). The move to Maryland—in and of itself—is not a dire emergency under the law. *See Strobel,* 565 S.W.2d at 239–40 (the child's desire to remain in his or her present situation did not raise a serious and immediate question concerning the child's welfare); *Klein,* 676 S.W.2d at 172 (fact that the child's emotional well-being would be better served by not changing his home or his lifestyle did not rise to the level of serious and immedi-

---

9. Dr. Gonzalez had been counseling D.F. for eight months, M.F. for a shorter period, and A.F. only since Marissa's death.

ate question concerning the child's welfare).

Indeed, as the Keenes acknowledge in their response brief, "a parent[ ] being a murder suspect" or even "a child's aversion to being with a parent" does not reach the level of a serious and immediate question regarding the children's emotional welfare. The Keenes urge, however, that the evidence here is sufficient because it goes beyond any such single set of circumstances. We disagree. The accumulation of evidence cannot create a need for immediate protection or a dire emergency where none exists. We conclude that as a matter of law the evidence failed to raise a serious and immediate question as to the welfare of the children. *See Grimes,* 717 S.W.2d at 952 (granting mandamus relief when the evidence fell far short of the proof required).

### CONCLUSION

Under the circumstances presented here, a trial court's authority to deny habeas corpus relief is narrow and well-defined. *See id.* Absent evidence showing that the children were in imminent danger of physical or emotional harm and that immediate action was necessary to protect them, Judge Hale had no authority to deny habeas corpus relief. *Id.* Here, no such evidence was shown. Accordingly, the petition for a writ of mandamus is conditionally. granted. Because the clerk of this court has been provided with copies of orders showing the Honorable Judge Hale has already complied with our order issued August 22, 2007 conditionally granting mandamus relief, formal issuance of the writ will not be necessary.