# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-26-00090-CV

**In re Georgina Yackelin Ramirez Uzcátegui**

## ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY

## M E M O R A N D U M   O P I N I O N

Relator Georgina Yackelin Ramirez Uzcátegui filed a petition for writ of mandamus asking that we direct the trial court to vacate its order denying her petition for writ of habeas corpus and to enter an order granting habeas relief and compelling the immediate return of her six-year-old child. Having reviewed the petition and record, we agree that she is entitled to the relief sought and conditionally grant the petition. *See* Tex. R. App. P. 52.8(c).

Relator and Jonathan Josué Vargas Rodríguez, real party in interest (RPI), are citizens of the Bolivarian Republic of Venezuela and the parents of G.J., a minor child and the subject of Relator's habeas petition in the trial court. The parties were married in Venezuela in 2022 but, in anticipation of RPI's then-imminent relocation to the United States for work, sought and obtained an agreed custody order in 2023. Specifically, on July 6, 2023, the Fifth Court of First Instance for the Protection of Children and Adolescents in Caracas, Venezuela, entered an agreed custody order (titled an interlocutory judgment with final force), awarding Relator *patria potestad*, effectively granting her exclusive possession of and decision-making authority for G.J.

for a three-year period ending July 6, 2026. Relator and RPI both signed the order. The record contains no evidence that this order was modified, vacated, or suspended by any Venezuelan court.

RPI traveled to the United States in May 2023 and, initially, Relator remained in Venezuela. In December 2023, Relator, who is a practicing obstetrician in Venezuela, left her job and traveled with G.J. to the United States to join RPI, and the three resided together in Austin, Texas, until February 2024, when the parties separated. During their period of estrangement, Relator and G.J. resided with Relator's cousin in Dallas, Texas, until November 2024, when Relator reconciled with RPI, and she and G.J. returned to Austin to reside with him again. The parties' marital difficulties persisted, however, and, in February 2025, an altercation between Relator and RPI's paramour led to Relator's arrest. Following her arrest, Relator was transferred to the South Texas ICE Processing Center in Pearsall, Texas, where federal agents, acting under color of law, denied her request to be reunited with G.J. prior to her deportation later that month or to be deported with him.

Relator alleges that, immediately following her deportation, she attempted to communicate with RPI to arrange for her son's return, but RPI has refused to cooperate. On October 27, 2025, Relator filed the underlying habeas petition seeking enforcement of the Venezuelan order, which she had previously sought to register with the trial court pursuant to section 152.305 of the Texas Family Code. Following a record hearing on January 7, 2026, at which Relator appeared remotely and RPI appeared in person, the trial court orally denied the petition, reciting various findings of fact and conclusions of law on the record. On the same day, the trial court also signed a handwritten order of denial at the bottom of what had been Relator's proposed order for issuance of writ of attachment. This original proceeding followed.

Mandamus relief is appropriate where the trial court clearly abuses its discretion and there is no other adequate remedy at law. *See Walker v. Packer*, 827 S.W.2d 833, 838 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* at 840. Thus, a trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *Perry v. Del Rio*, 66 S.W.3d 239, 257 (Tex. 2001) (orig. proceeding); *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996) (orig. proceeding). The denial of habeas corpus relief for possession of a child is not appealable; thus, Texas courts have long recognized mandamus as an appropriate vehicle to compel enforcement of a relator's right to possession in such proceedings. *See Gray v. Rankin*, 594 S.W.2d 409, 409 (Tex. 1980); *see also In re Guerrero*, 440 S.W.3d 917, 922 (Tex. App.—Amarillo 2014, orig. proceeding) (citing *Armstrong v. Reiter*, 628 S.W.2d 439, 440 (Tex. 1982) (orig. proceeding); *In re Kubankin*, 257 S.W.3d 852, 858 (Tex. App.—Waco 2008, orig. proceeding) (per curiam)).

"Absent evidence of a dire emergency, the trial court is required to issue a writ of habeas corpus once the relator has demonstrated the bare legal right to possession of the child; at that point, issuance of the writ should be automatic, immediate, and ministerial." *In re Freidman*, No. 03-25-00228-CV, 2025 WL 2087209, at *7 (Tex. App.—Austin July 25, 2025, orig. proceeding) (mem. op.) (quoting *In re Guerrero*, 440 S.W.3d at 922). The trial court has no discretion to deny the writ or to issue any other temporary order unless the party opposing the child's return presents evidence raising "a serious immediate question concerning the welfare of the child." Tex. Fam. Code § 157.374; *see also In re Lau*, 89 S.W.3d 757, 759 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding). Put another way, once the relator establishes a bare legal right to possession of the child, then, absent evidence of a dire emergency, issuance of habeas corpus relief is not a discretionary matter for the trial court to decide but instead becomes

a matter of right. *See In re Jones*, 263 S.W.3d 120, 123 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). We turn first to the question of whether Relator established a bare legal right within the meaning of the relevant authorities.

Writs of habeas corpus for the return of a child are governed by Subchapter H, Chapter 157 of the Texas Family Code. Subsection 157.371(b) of the Code provides that, "[a]lthough a habeas corpus proceeding is not a suit affecting the parent-child relationship, the court may refer to the provisions of this title [i.e., Title 5, governing suits affecting the parent-child relationship] for definitions and procedures as appropriate." Tex. Fam. Code § 157.371(b). Subsection 157.372(a) provides that

> [s]ubject to Chapter 152 . . . , if the right to possession of a child is governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator only if the court finds that the relator is entitled to possession under the order.

*Id.* § 157.372(a). Thus, if the Venezuelan order constitutes an order within the meaning of the quoted provision, and if the order entitles Relator to possession, then Relator has established the bare right of possession.

Relator argues in her petition that the Venezuelan order is governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified at Chapter 152 of the Texas Family Code. We agree. Subsection 152.105(a) provides that "[a] court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying this subchapter and Subchapter C." *Id.* § 152.105(a). In that provision, "this subchapter" refers to Subchapter B of that chapter, titled "General Provisions," which includes a number of definitions that apply throughout the chapter. Of particular relevance here are "[c]hild custody determination," defined as "a judgment, decree, or other order of a *court* providing for legal

4

custody, physical custody, or visitation with respect to a child . . . includ[ing] permanent, *temporary*, initial, and modification orders," and "[c]ourt," which "means an entity authorized under the law of a *state* to establish, enforce, or modify a child custody determination." *Id*. § 152.102(3), (6) (emphases added).

Family Code subsection 152.105(b) provides that "[e]xcept as otherwise provided in Subsection (c), a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this chapter must be recognized and enforced under Subchapter D." *Id.* § 152.105(b). Subsection (c) provides that "[a] court of this state need not apply this chapter if the child custody law of a foreign country violates fundamental principles of human rights." *Id.* § 152.105(c). Subchapter D, at subsection 152.303(a), provides that:

> A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this chapter or the determination was made under factual circumstances meeting the jurisdictional standards of this chapter and the determination has not been modified in accordance with this chapter.

*Id.* § 152.303(a).

Taken together, the foregoing Family Code provisions compel the conclusion that, the Bolivarian Republic of Venezuela must be treated "as if it were a state of the United States" under subsection 152.105(a) of that Code; that the Fifth Court of First Instance for the Protection of Children and Adolescents in Caracas, Venezuela, is a "court" within the meaning of subsection 152.102(6); and that the Venezuelan order is therefore a "child custody determination" within the meaning of subsection 152.102(3). As such, the determination "must

5

be recognized and enforced" by the trial court unless one of the statutory exceptions applies. The record before us discloses no more than a scintilla of evidence of any such exception.

RPI, who appeared in person but unrepresented by counsel at the habeas hearing, did not argue that the child-custody law of Venezuela violates fundamental principles of human rights, nor did he adduce any evidence that the Venezuelan order was procured under factual circumstances not in substantial conformity with the jurisdictional standards of Chapter 152. RPI's opposition to Relator's attempt to register the Venezuelan order in the trial court alleged that his signature had been forged and that he had received no notice of the Venezuelan court proceedings—allegations which are among the grounds in Family Code section 152.305 for contesting registration of a child-custody determination issued by a foreign court—but there are numerous problems with his allegations. First, the trial court could reasonably discredit these allegations that were in an affidavit alongside various boilerplate objections, including that the order lacked an apostille—given Relator's uncontroverted testimony at the hearing that the document has been apostilled. Second, RPI's later actions inconsistent with his representations, such as petitioning to "modify" the order, impliedly acknowledged its validity and gave the trial court a reasonable basis to exercise its discretion. Third, based on RPI's colloquy with the trial court during the hearing, in which RPI did not explicitly deny signing the order, the trial court could reasonably find that Relator's testimony at the same hearing that RPI did sign the order was substantially uncontroverted. Finally, as discussed further below, the trial court did not rely on an alleged lack of notice in denying the habeas petition.

RPI's response to Relator's mandamus petition contends that the UCCJEA is inapplicable to the Venezuelan order and that it does not qualify as a "child custody determination" under Family Code subsection 152.102(3) because it was not a court order or the

6

result of a contested proceeding and did not establish permanent conservatorship. His arguments are legally unsupportable. As we have noted, Family Code subsection 152.102(3) defines "[c]hild custody determination" to include temporary orders, and the Fifth Court of First Instance for the Protection of Children and Adolescents in Caracas, Venezuela, is a "court" within the meaning of subsection 152.102(6). *Id.* § 152.102(3), (6). Moreover, nothing in the UCCJEA excludes agreed orders from recognition and enforcement.

We conclude that Relator has established her bare legal right to possession of G.J. *In re Freidman*, 2025 WL 2087209, at *7. We turn next to the question of whether RPI has raised "a serious immediate question concerning the welfare of the child," which would have justified the trial court's rendition of "an appropriate temporary order" in RPI's favor and denial of Relator's requested habeas relief. Tex. Fam. Code § 157.374. We conclude that he has not.

"A serious and immediate question concerning the child's welfare requires proof of an imminent danger to the child's physical or emotional well-being, or, put another way, a dire emergency." *In re Guerrero*, 440 S.W.3d at 922–23 (citing *In re deFilippi*, 235 S.W.3d 319, 322 (Tex. App.—San Antonio 2007, orig. proceeding)). The record before us contains no allegation or evidence of such imminent danger. In his submissions and testimony to the trial court, RPI's only allegation bearing on G.J.'s physical safety concerned a past occurrence, namely, Relator's migration with G.J. to the United States to join RPI. While such a journey is undoubtedly perilous, the record gives no indication that Relator, a practicing obstetrician in Venezuela, has any intent to repeat it, especially since her first journey was to join RPI.

Moreover, the trial court did not purport to apply this imminent-danger standard in reaching its decision. Instead, as Relator points out in her petition, both the record and the written order show that the trial court rested its decision on only several improper or irrelevant

7

considerations. For example, the trial court found significant that the Venezuelan order was temporary: "[T]his is a temporary order. By its own terms, it expires in three years. In fact, it expires in a few months. By the time that this case would be decided by the court of appeals, this order would be expired." The trial court also noted, "It wasn't a final order." In its handwritten order denying relief, the trial court reiterated that the order was temporary: "Venezuelan court order is a temporary order expiring this year." As noted above, however, and as Relator correctly points out in her petition, the statutory definition of a "child custody determination" expressly includes temporary orders. Tex. Fam. Code § 152.102(3). For another example, the trial court made highly general remarks about "the turmoil in Venezuela" but made no finding of fact that would undermine the jurisdictional validity of the child-custody determination or raise a serious and immediate question concerning G.J.'s welfare.

Finally, the trial court made findings arguably relevant only to a best-interest analysis, observing that the six-year-old G.J. has "been here for three years," is "enrolled in school," and "[s]eems well adapted." As the supreme court has long held and frequently reaffirmed, however, "a child custody habeas corpus proceeding may not be used to relitigate the custody order." *Schoenfeld v. Onion*, 647 S.W.2d 954, 955 (Tex. 1983). "The trial court may not deny the writ based on the best interests of the child." *Id*. Instead, upon proof of the prior order, absent dire emergency, "the grant of the writ of habeas corpus should be automatic, immediate, and ministerial." *Id*.

It remains only to be determined whether Relator lacks an adequate remedy by appeal. We conclude that such remedy is lacking. As stated briefly above, it is well-established that a trial court's order granting or denying a writ of habeas corpus in a child-custody case is not an appealable order. *See, e.g.*, *Gray*, 594 S.W.2d at 409. Accordingly, mandamus may lie to

8

correct an erroneous denial of habeas relief under the Family Code. *In re Guerrero*, 440 S.W.3d at 923.

For the foregoing reasons, Relator's petition for writ of mandamus is conditionally granted. *See* Tex. R. App. P. 52.8(c). We direct the trial court to vacate its January 26, 2026 order denying Relator's requested relief on her petition for writ of habeas corpus and grant Relator's petition for writ of habeas corpus for the immediate return of G.J. to her possession. The writ will issue only if the trial court does not comply.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Filed: March 18, 2026